IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

TERESA C. KOCH and ROBERT W. KOCH, )
)
         Plaintiffs,                )    TC-MD 160391N
)
     v.                         )
)
DEPARTMENT OF REVENUE,        )
State of Oregon,                )
)
         Defendant.              )    **FINAL DECISION**[1]

Plaintiffs appeal Defendant's Notice of Assessment, dated September 22, 2016, for the

2012 tax year. A trial was held in the Oregon Tax Courtroom on October 20, 2017, in Salem,

Oregon. Plaintiffs appeared and testified on their own behalves.[2] James C. Strong, Assistant

Attorney General, appeared on behalf of Defendant. Dane Palmer (Palmer), Tax Auditor,

testified on behalf of Defendant. Plaintiffs' Exhibits 55 to 57 and 62 to 64 were received without

objection.[3] Defendant's Exhibits A, B at 1 to 5, and C to E were received without objection.

## I. STATEMENT OF FACTS

Plaintiffs testified about their business reported on their 2012 Schedule C. Teresa

testified that they started a bookstore in Newport from scratch beginning in 2011, called "Books

on the Beach." (*See* Def's Ex A at 7.) Teresa testified that they purchased books from various

locations, including St. Vincent de Paul, the Salvation Army, and the Humane Society, to resell

---

[1] This Final Decision incorporates without change the court's Decision, entered December 29, 2017. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

[2] Ordinarily, the court refers to individuals by their last names. However, two witnesses share the same last name, Koch, so the court will use their first names.

[3] Defendant questioned the necessity of Plaintiffs' Exhibit 57 given the admission of Plaintiffs' Exhibit 56. Robert testified that Exhibit 57 was a partial mileage log from 2012, whereas Exhibit 56 was the complete log. He testified that the two exhibits were printed from files last revised in 2012 and 2013, respectively. In Robert's view, the existence of the partial log (Exhibit 57) lent credibility to his testimony regarding the complete log (Exhibit 56).

to customers. Plaintiffs testified that they used their two vehicles throughout the year to acquire inventory and bookshelves, and to transport books to the store in Newport.

Defendant audited Plaintiffs' 2012 Schedule C business loss. (*See* Def's Ex B at 1.) Defendant's auditor, Palmer, made inventory adjustments, and denied Plaintiffs' vehicle expenses of $20,293 due to lack of substantiation. (Def's Ex B at 2.) Defendant issued a Notice of Deficiency dated October 6, 2015. (*Id*.) Plaintiffs appealed and requested a conference, during which the conference officer Jamie Tenace (Tenace) found additional gross receipt income of $12,564. (Def's Ex B at 1.)

A.      *Plaintiffs' 2012 Income*

Palmer testified that Tenace performed a bank deposit analysis of Plaintiffs' bank accounts and found unreported income. (*See* Def's Ex C.) He testified that he is familiar with the technique of bank deposit analysis and gave the following explanation of the steps followed. First, the auditor totals all of the deposits from the taxpayer's bank accounts. Second, the auditor identifies and subtracts all of the nontaxable transfers, such as store credits for returned items. Third, the auditor subtracts income items reported on the taxpayer's return, such as wages and Schedule C income. The auditor treats any remaining deposits that are unaccounted for as taxable income. Palmer testified that Tenace's analysis of Plaintiffs' two bank accounts yielded $12,564 in unaccounted-for deposits. (Def's Ex C at 3.)

Defendant's bank deposit analysis identified nontaxable transfers totaling $1,126, of which $230 was in November and $896 was in December. (*See* Def's Ex C at 1.) Palmer testified that Defendant did not receive deposit slips or similar evidence to identify additional deposits as nontaxable. Robert testified that he did not have any copies of cancelled checks or deposit slips. He testified that Plaintiffs provided to Tenace a large box of evidence, including

cancelled checks and deposit slips. Robert testified that those documents were originals, so that is why Plaintiffs could not provide them with their exhibits. Robert testified that the original documents were not returned to Plaintiffs and they evidently did not retain copies. Teresa questioned why Tenace did not appear at trial, given that she performed the audit and bank deposit analysis. Palmer testified that he had no duties with respect to Plaintiffs' audit.

Robert testified that he reviewed Defendant's bank deposit analysis and found that Defendant treated certain deposits as taxable income that were not, in fact, taxable income. For instance, a $59.49 store credit from Macy's on May 29. (*See* Ptfs' Ex 64 at 1; Def's Ex E at 18.) Palmer testified that the Macy's store credit was identified as a credit in the bank deposit analysis, albeit in June. (*See* Def's Ex C at 1 (returned items).) Robert testified that numerous deposits were checks drawn on one of Plaintiffs' accounts and deposited into another. For instance, he testified that a $400 deposit of check 1323 was drawn from Teresa's personal bank account and deposited into the business account on January 13. (*See* Ptfs' Ex 64 at 1; Def's Exs D at 1, E at 1.) Robert testified that many deposits were due to Plaintiffs "churning" their own accounts; moving money between the accounts to avoid overdraft fees. He testified that Plaintiffs should not be taxed on their own money. Robert testified that he identified over $6,000 of nontaxable deposits that Defendant treated as taxable income. (Ptfs' Ex 64.)

Robert testified that Plaintiffs often took loans out from pawn shops in 2012. (*See* Ptfs' Ex 55.) He provided some "screen grabs" and other records from the pawn shops showing loans Plaintiffs received and repayments. (*See id.*) Robert testified that Plaintiffs would leave collateral with the shops and receive cash in return, which they would pay back with interest. He testified that he could not recall what he did with all of the pawn shop loans; some funds would have been deposited into the bank and other funds would have been used on book-buying trips.

Robert testified that, in 2012, Plaintiffs' pawn shop loans and amounts churned between bank accounts totaled over $12,500, which exceeds the amount that Defendant claimed was unreported income. (*See id.*)

B.     *Plaintiffs' 2012 Mileage*

Teresa testified that, in 2012, she was an operating room nurse at a surgery center in Eugene. She testified that she would work all day, then often go out on book-buying trips after work. Robert testified that he sometimes accompanied her on the book-buying trips. Teresa testified that Plaintiffs typically visited all of the St. Vincent de Paul shops in Eugene and sometimes visited shops in surrounding areas, such as Corvallis and Albany. She testified that there were 11 St. Vincent de Paul shops in Eugene. Teresa testified that Plaintiffs sometimes drove to IKEA in Portland to purchase bookshelves and other furniture for the store. She testified that she also made trips to Plaintiffs' store in Newport to deliver the books.

Teresa testified that she kept a calendar in her car and would record her business trips on that calendar. She testified that she would transcribe the handwritten log into a computerized record. Robert testified that Plaintiffs were unable to locate their handwritten 2012 mileage log. He thought it may have been destroyed in a flood in the bookstore. Teresa initially testified that the mileage she recorded was beginning and ending at Plaintiffs' home in Marcola. She later testified that she misunderstood the question; in fact, her reported mileage did not include travel between Plaintiffs' home and the surgery center.

Plaintiffs' log listed mileage trips for the following cities for multiple times during the year: Eugene at 80 miles, Newport at 260 miles, Bend at 420 miles, Albany at 168 miles and 260 miles, Portland at 370 miles, and Fargo at 2,100 miles. (*See* Ptfs' Ex 56.) Plaintiffs identified the date for each trip, but no other information such as specific destinations. (*See id.*)

Robert testified that, when visiting St. Vincent de Paul shops in Eugene, Plaintiffs had to take a circuitous route to visit all of the stores before closing. He testified that Plaintiffs always followed the same route, so that is why the mileage is the same; *e.g.*, 80 miles for Eugene. (*See id* at 1.) Regarding the trip to Fargo, North Dakota, Teresa testified that Plaintiffs picked up books and returned to Oregon with a car full of books. She testified that her daughter lives in Fargo, so she also visited family there. Teresa testified that her sister lived in Bend for part of 2012 and then moved out of state.

Plaintiffs provided vehicle service records with odometer readings demonstrating that they drove over 30,000 in their Prius in 2012 and over 16,000 in their Sequoia in 2012. (Ptfs' Exs 62, 63.) Robert testified that those vehicle records support Plaintiffs' claimed mileage.

Robert testified that, in 2012, Plaintiffs lived in Marcola, which is approximately 9 miles outside of Springfield. Teresa testified that Plaintiffs lived approximately 15 miles outside of Eugene. She testified that Albany is approximately 40 to 45 miles from Plaintiffs' home and IKEA is approximately 120 miles from Plaintiffs' home.

Palmer testified that Plaintiffs' mileage log did not meet the adequate substantiation requirements of Internal Revenue Code (IRC) section 274(d).

## II. ANALYSIS

The two issues presented in this case for the 2012 tax year are: (1) whether Plaintiffs had additional income of $12,564; and (2) whether Plaintiffs are allowed any or all of their claimed mileage deduction of $20,293, based on 36,564 miles.

/ / /

/ / /

A.      *Income Tax Guidelines and Burden of Proof*

In analyzing Oregon income tax cases, the court starts with several general guidelines.

First, as this court has previously noted, "[t]he Oregon legislature intended to make Oregon

personal income tax law identical to the [IRC] * * * subject only to modifications specified in

Oregon law." *Voy v. Dept. of Rev.*, 20 OTR 179, 181 (2010), quoting *Ormsby v. Dept. of Rev.*,

18 OTR 146, 151 (2004); ORS 316.007.[4]  Second, allowable deductions from taxable income are

a "matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the

deductions claimed.  *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d

226 (1992).  Third, "[i]n all proceedings before the judge or a magistrate of the tax court and

upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of

proof.  The burden of proof shall fall upon the party seeking affirmative relief[.]"  ORS 305.427.

"Preponderance of the evidence means the greater weight of evidence, the more convincing

evidence."  *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).  "[I]f the evidence is

inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *."

*Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

B.      *Additional 2012 Income*

"Gross income" is defined as "all income from whatever source derived * * *."

IRC § 61(a).  All income is included in an individual's gross income unless otherwise provided

by the IRC.  *Id.*  Defendant may prove the existence of unreported income "by any practical

method available in the circumstances of the particular situation."  *Flowers v. Dept. of Rev.*, 16

OTR-MD 151, 153 (1999), citing *U.S. v. Doyle*, 234 F2d 788, 793 (7th Cir 1956).  "The

reconstruction need only be reasonable in light of all surrounding facts and circumstances."

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

*Petzoldt v. Comm'r,* 92 TC 661, 687 (1989) (citation omitted). "The bank deposits method is a permissible method of reconstructing income. * * * Bank deposits constitute prima facie evidence of income." *Ekwenugo v. Comm'r*, 102 TCM (CCH) 321, WL 4484788 at *3 (2011) (internal citations omitted). "[T]he taxpayer must prove that the reconstruction is in error and may do so, in whole or in part, by proving that a deposit is not taxable." *Id.*

In 2012, Plaintiffs maintained two bank accounts: one for business and one for personal purposes. Funds were deposited into and withdrawn from Plaintiffs' bank accounts and it is difficult to determine from the bank statements alone the purpose of many of those deposits and withdrawals. However, Plaintiffs provided credible testimony, supported by documentary evidence, that some of the deposits were nontaxable. (*See* Ptfs' Ex 64.) Robert testified that a check written on one account and deposited into the other account on the same day was a nontaxable transfer of funds to avoid overdraft fees. (*See id.*) In reviewing Plaintiffs' bank statements and their listing of nontaxable transfers from those statements, the court finds the following deposits or transfers were nontaxable based on corresponding withdrawals.

Business checking account deposits with corresponding personal checking withdrawals

| Into Business Checking | Amount | From Personal Checking | By |
|---|---|---|---|
| Jan 6 (Def's Ex D at 1) | $125 | Jan 6 (Def's Ex E at 1) | Check #1351 |
| Jan 13 (Def's Ex D at 1) | $400 | Jan 13 (Def's Ex E at 1) | Check #1323 |
| July 19 (Def's Ex D at 23) | $70 | July 19 (Def's Ex E at 26) | Check #1399 |
| Nov 2 (Def's Ex D at 38) | $100 | Nov 2 (Def's Ex E at 40) | Check #1461 |
| Total: | $695 | | |

/ / /

/ / /

/ / /

/ / /

Personal checking account deposits with corresponding business deposit withdrawals

| Into Personal Checking | Amount | From Business Checking | By |
|---|---|---|---|
| Jan 18 (Def's Ex E at 1) | $450 | Jan 18 (Def's Ex D at 2) | Check #700 |
| Feb 1 (Def's Ex E at 4) | $400 | Feb 1 (Def's Ex D at 6) | Miscellaneous Debit |
| Feb 29 (Def's Ex E at 7) | $500 | Feb 29 (Def's Ex D at 6) | Check (no #) |
| May 1 (Def's Ex E at 15) | $200 | May 1 (Def's Ex D at 16) | Withdrawal (Newport) |
| May 9 (Def's Ex E at 15) | $116 | May 9 (Def's Ex D at 16) | Check (no #) |
| May 10 (Def's Ex E at 15) | $200 | May 10 (Def's Ex D at 16) | Withdrawal (Springfield) |
| May 29 (Def's Ex E at 18) | $200 | May 29 (Def's Ex D at 17) | 2 Withdrawals (Newport) at $40 and $180 [5] |
| May 30 (Def's Ex E at 18) | $40 | May 30 (Def's Ex D at 17) | Withdrawal (Springfield) |
| Jun 5 (Def's Ex E at 18) | $80 | Jun 5 (Def's Ex D at 20) | Withdrawal (Newport) |
| Jun 26 (Def's Ex E at 22) | $140 | Jun 26 (Def's Ex D at 22) | Miscellaneous Debit |
| Jul 10 (Def's Ex E at 22) | $450 | July 10 (Def's Ex D at 24) | Check (no #) |
| July 12 (Def's Ex E at 22) | $40 | July 12 (Def's Ex D at 24) | Withdrawal (Springfield) |
| July 26 (Def's Ex E at 26) | $280 | July 26 (Def's Ex D at 25) | Withdrawal (Newport) |
| Aug 1 (Def's Ex E at 26) | $240 | Aug 1 (Def's Ex D at 28) | Withdrawal (Newport) |
| Aug 23 (Def's Ex E at 31) | $160 | Aug 23 (Def's Ex D at 29) | Withdrawal (Springfield) |
| Sep 5 (Def's Ex E at 31) | $220 | Sep 5 (Def's Ex D at 32) | Miscellaneous Debit |
| Sep 28 (Def's Ex E at 35) | $80 | Sep 28 (Def's Ex D at 33) | Withdrawal (Newport) |
| Oct 10 (Def's Ex E at 35) | $60 | Oct 10 (Def's Ex D at 36) | Withdrawal (Springfield) |
| Oct 15 (Def's Ex E at 35) | $60 | Oct 15 (Def's Ex D at 36) | Check (no #) |
| Oct 23 (Def's Ex E at 39) | $300 | Oct 23 (Def's Ex D at 37) | Withdrawal (Newport) |
| Nov 15 (Def's Ex E at 39) | $260 | Nov 15 (Def's Ex D at 39) | Withdrawal (Eugene) |
| Total: | $4,476 | | |

The amount transferred between the two accounts totaled $5,171.

Plaintiffs maintained that some of the funds identified by Tenace as additional income were, in fact, proceeds from pawnbroker loans.[6] Plaintiffs obtained loans at pawnbroker shops

---

[5] The deposit made on May 29, 2012, consisted from money withdrawn on the same day in Newport: the first for $40 at 8:50 a.m. and the second for $180 at 8:51 a.m. As these funds were withdrawn within one minute of each other, the court accepts Plaintiffs' assertion that the deposit of $200 into the personal checking account came from those withdrawals. (*See* Ptf's Ex 64 at 1.)

[6] Receipt of a loan is not income to the borrower for federal income tax purposes. *Karns Prime & Fancy Food, Ltd. v. Comm'r*, 494 F3d 404, 405 (3rd Cir 2007), *affg* TC Mem 2005-233.

using personal assets as collateral: they took out loans based upon the items' value agreed upon with the broker, then returned the items at a specified later date to repay the loan plus interest. Plaintiffs provided some business records of their pawnbroker loans, though two of those loans were "re-write" or "rnew," indicating that the loan was not paid off but, rather, the prior loan was extended.  (*See* Ptfs' Ex 55 at 1, 5.)

In reviewing the pawnbroker statements, the following transactions were found:

| Pawn Shop Loan | Date | Amount | Into Business Checking | Amount | Into Personal Checking | Amount | Deposit Total |
|---|---|---|---|---|---|---|---|
| Ace Trading (Ptfs' Ex 55 at 1) | Aug 7 | $1,000.00 | no match | | no match | | $-0- |
| Ace Trading (Ptfs' Ex 55 at 1) | Oct 4 | Rewrite | | | | | $-0- |
| Ace Trading (Ptfs' Ex 55 at 1) | Dec 3 | $1,000.00 | Dec 3 (Def's Ex D at 41) | $600 | none | | $600 |
| Ace Cash Exp (Ptfs' Ex 55 at 2) | Jan 4 | $339.15 | no match | | no match | | $-0- |
| Ace Cash Exp (Ptfs' Ex 55 at 2) | Feb 6 | $339.15 | Feb 6 (Def's Ex D at 5) | $100 | Feb 6 (Def's Ex E at 4) | $200 | $300 [7] |
| Ace Cash Exp (Ptfs' Ex 55 at 2) | Mar 19 | $339.15 | no match | | no match | | $-0- |
| Ace Cash Exp (Ptfs' Ex 55 at 2) | Apr 23 | $339.15 | none | | Apr 23 (Def's Ex E at 15) | $300 | $300 |
| Ace Cash Exp (Ptfs' Ex 55 at 2) | May 30 | $339.15 | May 30 (Def's Ex D at 15) | $160 | May 30 (Def's Ex E at 18) | $140 | $300 |
| Ace Cash Exp (Ptfs' Ex 55 at 2) | Aug 20 | $339.15 | no match | | no match | | $-0- |

---

[7] The pawn loans from Ace Cash Express were somewhat consistently deposited at $300 either into one account or a combination of both accounts on the same date of the loan.

| | | | Def's Ex D | | Def's Ex E | | |
|---|---|---|---|---|---|---|---|
| Ace Cash Exp (Ptfs' Ex 55 at 2) | Oct 1 | $339.15 | Oct 1 (Def's Ex D at 35) | $150 | Oct 1 (Def's Ex E at 35) | $150 | $300 |
| Ace Cash Exp (Ptfs' Ex 55 at 2) | Nov 12 | $339.15 | none | | Nov 13 (Def's Ex E at 39) | $300 | $300 |
| Ace Cash Exp (Ptfs' Ex 55 at 2) | Dec 21 | $339.15 | no match | | no match | | $-0- |
| Best Cash (Ptfs' Ex 55 at 5) | Feb 16 | $1,200.00 | none | | Feb 16 (Def's Ex E at 7) | $1,400 [8] | $1,400 |
| Best Cash (Ptfs' Ex 55 at 5) | Apr 12 | Renewed | | | | | $-0- |
| Best Cash (Ptfs' Ex 55 at 5) | May 23 | $1,200.00 | none | | May 23 (Def's Ex E at 18) | $1,200 | $1,200 |
| | | | | | | Total: | $4,700 |

The amount borrowed from pawn shops and deposited into the accounts totaled $4,700.

Plaintiffs have proven by a preponderance of the evidence that $9,871 of the $12,564 in bank deposits identified by Tenace were nontaxable transfers or loans. Although Defendant questioned the sufficiency of Plaintiffs' evidence on that issue, Defendant failed to provide any rebuttal evidence or testimony from Tenace, who performed the bank deposit analysis.

B.  *Mileage Expenses*

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]"  To be "ordinary," the transaction that gives rise to the expense must be of a common or frequent occurrence in the type of business involved. *Deputy v. Du Pont,* 308 US 488, 495, 60 S Ct 363, 84 L Ed 416 (1940),

---

[8] The deposit of $1,400 on February 16 consisted of both the pawn loan of $1,200 and a February 16 $200 cash withdrawal from the business checking account at the Springfield location that cleared the bank on February 17. (Def's Ex D at 6.)  The withdrawal from the business checking account was not included in the transferred amounts analysis earlier in this decision.

citing *Welch v. Helvering* (*Welch*), 290 US 111, 114, 54 S Ct 8, 78 L Ed 212 (1933). A

"necessary" expense is one that is "appropriate and helpful" to the taxpayer's business.

*See Welch*, 290 US at 113.

Generally, if a claimed business expense is deductible, but the taxpayer is unable to

substantiate it fully, the court is permitted to make an approximation of the allowable amount.

*Cohan v. Comm'r* (*Cohan*), 39 F2d 540, 543–44 (2d Cir 1930). The estimate must have a

reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 742–43 (1985). IRC section 274

supersedes the *Cohan* rule and imposes more stringent substantiation requirements for certain

expenses, including use of listed property, such as a personal automobile. *See* IRC §§ 274(d)(4),

280F(d)(4); Treas Reg § 1.274-5T(c). Under IRC section 274(d), a taxpayer must substantiate a

claimed expense subject to section 274 with "adequate records or by sufficient evidence

corroborating the taxpayer's own statement" establishing the amount, time, place, and business

purpose of the expense. *See also* Treas Reg § 1.274-5T(b).

To meet the "adequate records" requirement of section 274(d),

> "a taxpayer shall maintain an account book, diary, log, statement of expense, trip
> sheets, or similar record * * * and documentary evidence * * * which, in
> combination, are sufficient to establish each element of an expenditure or use
> * * *. It is not necessary to record information in an account book, diary, log,
> statement of expense, trip sheet, or similar record which duplicates information
> reflected on a receipt so long as the account book, etc. and receipt complement
> each other in an orderly manner."

Treas Reg § 1.274-5T(c)(2)(i). "Although a contemporaneous log is not required, corroborative

evidence to support a taxpayer's reconstruction 'of the elements * * * of the expenditure or use

must have a high degree of probative value to elevate such statement' to the level of credibility

of a contemporaneous record." *Christine v. Comm'r*, TC Mem 2010-144, WL 2640125 at *3

(2010), citing Treas Reg § 1.274-5T(c)(1).[9] To comply with the strict substantiation requirements, the taxpayer must have adequate records or sufficient evidence corroborating the amount, time, place, and business purpose of the travel. IRC § 274(d); Treas Reg § 1.274-5T(b)(2).

Plaintiffs failed to produce detailed mileage logs or other similar records for the 2012 tax year. Plaintiffs' handwritten calendar mileage log was not provided as evidence. The computerized log provided by Plaintiffs stated the date and general area of travel, but not the specific places visited, despite Robert's testimony that Plaintiffs frequently visited numerous stores during book-buying trips. The log did not identify the business purpose of any trips. Teresa's testimony was inconsistent, stating at first that the mileage to Eugene included commuting mileage to work, and then stating that the log did not include commuting mileage. Because the actual locations of where Plaintiffs went on their travel for each day was not listed on the computerized log, the court cannot determine if commuting mileage was included in the total mileage claimed. Additionally, the logs listed mileage with mixed personal and business purposes, such as the trips to Fargo and Bend where Plaintiffs visited family. Plaintiffs have failed to prove by a preponderance of the evidence that any additional deduction for mileage should be allowed under the strict substantiation requirement of IRC section 274(d).

## III. CONCLUSION

After careful consideration, the court concludes that Plaintiffs have established by a preponderance of the evidence that $9,871 of the $12,564 in bank deposits identified by

---

[9] Treas Reg § 1.274-5T(c)(1) states: "A contemporaneous log is not required, but a record of the elements of an expenditure or of a business use of listed property made at or near the time of the expenditure or use, supported by sufficient documentary evidence, has a high degree of credibility not present with respect to a statement prepared subsequent thereto when generally there is a lack of accurate recall. Thus, the corroborative evidence required to support a statement not made at or near the time of the expenditure or use must have a high degree of probative value to elevate such statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure or use supported by sufficient documentary evidence."

Defendant were nontaxable transfers or loans. Additionally, the court concludes that Plaintiffs have failed to establish that they should be allowed a vehicle expense deduction. Now, therefore,

IT IS THE DECISION OF THIS COURT that, for the 2012 tax year, $9,871 of the $12,564 in bank deposits identified by Defendant as unreported income were nontaxable.

IT IS FURTHER DECIDED that Plaintiffs' 2012 vehicle expense deduction is denied.

Dated this ____ day of January, 2018

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Allison R. Boomer and entered on January 16, 2018.*